IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

03 OCT 15

U.S. DISTRICT COURT
N.D. OF ALABAMA

ORIGINAL

LATIERRA PHILLIPS, as mother and )
next friend of La Shundra Harris, La )
Shone Harris, Cornelious Harris, and )
La'Warron Phillips, )
                              )
       Plaintiff(s), )
                              )
vs. )         CIVIL ACTION NO.:
                              )         CV - 03-PWG-0616-S
HOUSING AUTHORITY OF THE )
BIRMINGHAM DISTRICT, Timothy )
Clark and Wash Co., Inc. , )
                              )
       Defendant(s). )

## HABD'S NARRATIVE SUMMARY AND MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

COMES NOW the Defendant, Housing Authority of the Birmingham District ("HABD") and respectfully submits this narrative summary of undisputed facts and memorandum of law in support of its motion for summary judgment filed contemporaneously herewith.

**<u>Narrative Summary of Undisputed Facts</u>**

On March 19, 2002, the plaintiff, Latierra Phillips, as mother and next friend of La Shundra Harris, La Shone Harris, Cornelious Harris, and La'Warron Phillips, filed this action against the Housing Authority of the Birmingham District, Timothy Clark, and Wash Co., Inc. (Plaintiff's Complaint.) The complaint set forth various state and federal counts alleging the presence of lead based paints within housing that the plaintiffs allegedly resided in from 1999-2002, and alleging that those properties were either owned or administered by HABD. The state law counts were based

39

theories of negligence, wantonness, and breach of contract. The plaintiffs' federal claims were based upon 42 U.S.C. § 1983 for alleged violation of federal statutory rights arising under The Lead-Based Paint Poisoning Prevention Act, 42 U.S.C. § 4821, et seq. ("LPPPA"), The United States Housing Act of 1937, 42 U.S.C. § 1437, et seq. ("USHA"), and The Residential Lead-Based Paint Hazard Reduction Act of 1992, 42 U.S.C. § 4851, et seq. ("RLBPHRA").  The Complaint alleged that jurisdiction is proper under 28 U.S.C. § 1331 for the federal questions regarding the § 1983 claims and proper as to the state claims under 28 U.S.C. § 1367 supplemental jurisdiction. Additionally the plaintiff alleged that her breach of contract claim, based on a contract between the Department of Housing and Urban Development and HABD, was a federal question. (Complaint at ¶ 16, Count X & XI.)

The residences in which the plaintiff has alleged she resided are: (1) 37 Village Court West, in Elyton Village, Birmingham Alabama – a federally subsidized housing project (Id. at ¶ 5); (2) 1017 15th Place S.W., Birmingham Alabama – federally subsidized Section 8 housing (Id. at ¶ 6); and (3) 1521 33rd Street, Birmingham Alabama – federally subsidized Section 8 housing.  Of the three locations, HABD only administers the Elyton Village residence. (Affidavit of Linda Carroll, Exhibit B.)  That property, however, was not occupied by the plaintiff during the time period set out in her complaint. (Affidavit of Richard Allen, exhibit C.)

The complaint alleged that the plaintiffs were third-party beneficiaries of the Annual Contributions Contract ("AC contract") between the Department of Housing and Urban Development ("HUD") and HABD.  However, section 21 of the AC contract contains the following provision:

> "Except as to bondholders, as stated in Part B ... of this ACC, nothing in the ACC shall be construed as creating any right of any third party to enforce any provision of the ACC or to assert any claim against HUD or the HA[BD]."

(Exhibit A at § 21.)  The contract between HUD and HABD is attached as exhibit A.

HABD moved to dismiss the complaint based on the grounds that the LPPPA, USHA, and RLPHRA did not confer rights upon the plaintiff enforceable under § 1983.  HABD further moved to dismiss various counts based on the alleged presence of lead paint at two Section 8 properties on the grounds that HABD did not own or administer the questioned Section 8 Housing.  HABD also argued that the negligence per se counts and the third-party-beneficiary-breach-of-contract counts were due to be dismissed based on the grounds that the plaintiffs were not residents of the Elyton Village residence.

The Court granted HABD's motion to dismiss as to most of the plaintiff's § 1983 counts on September 11, 2003.  The Court's order is attached as exhibit D.

## Argument

### I. The Remaining § 1983 Claims are Due to be Dismissed

Following the Court's dismissal of counts I, II, III, XII and XIII, only three § 1983 counts remain.  Like the counts previously dismissed, those counts are § 1983 claims based on the LPPPA, RLPHRA and  USHA.  As the Court has established, the plaintiff may not maintain a § 1983 action based on alleged statutory rights conferred by the above acts.  Accordingly, counts XXI, XXII and XXIII are also due to be dismissed.

### A. Count XXI

Count XXI alleges a § 1983 claim based upon allegations that HABD deprived the plaintiffs of rights granted them under the LPPPA.  A claim based on a statutory violation is enforceable under § 1983 only when the statute "unambiguously confer[s]" rights, privileges, or immunities in the particular plaintiff.  Gonzaga University v. Doe, 536 U.S. 273, 283 (2002).  However, as this Court

3

has previously ruled, an action under § 1983 to enforce the provisions of the LPPPA is foreclosed

because the enactment of the LPPPA created no personal rights in the plaintiff which are enforceable

under § 1983.  See Gonzaga, 536 U.S. at 283.  The Court's order of September 11, 2003, held:

> "**Neither § 4822 [LPPPA] nor § 1437(1) can reasonably be said to create an unambiguous individual right**.  The text of the statutes, both singly and when read together, are based exclusively on the person or agency being regulated.  That is, the Secretary of Housing and Urban Development is directed by Congress to require public housing authorities to meet certain criteria before federal funding is made available.

> "Courts concluding that the statutory text of § 4822 created an individual right have done so by finding that the act contained mandatory-not optional-requirements for the state actor. ...  The mandatory/precatory test for statutory language as promulgated by the Supreme Court in Blessing comes into play in the post-Gonzago-Sandoval context only after the statute has been parsed and language establishing an individual right has been identified.  Assuming [the plaintiffs] contention that the statute creates an obligation upon the HABD to implement the requirements of the Secretary in regulations promulgated to administer the funding provisions of 4822 et seq. to be factually sustainable, the issue remains whether an individual right to such performance was created in persons situated as the plaintiff here.  The statute simply does not establish such a right.  Moreover, the relevant regulations do not necessarily create such a right.  While it is true that the Secretary may and indeed has established performance standards, the regulations do little to support the notion that Congress intended to create such an individual right.  **Clearly the failure to perform consistent with the requirements of the statute and the Secretary may be a violation of federal law, but that fact does not create an enforceable individual right**.

> "The issue to be addressed in consideration of the motion of HABD is not whether it is good public policy to preclude an individual law suit to enforce the provisions of the LPPPA but whether under controlling Eleventh Circuit authority this court may properly find threshold individually enforceable right within the statutory text.  **As the statute and, indeed, the enabling regulation clearly do not establish "unambiguously" such a right, counts II and XII**[, § 1983 counts based on alleged violations of the LPPPA,] **are due to be DISMISSED**."

Accordingly, Plaintiff's count XXI, also based on the LPPPA, is due to be dismissed.

## B.  Count XXII

Count XXII of the plaintiff's complaint alleges a 1983 claim based on alleged deprivation of rights under the RLPHRA. The Court has previously held that the RLPHRA does not create individual rights enforceable by the plaintiffs. The Court held:

"In her complaint Ms. Phillips relies upon two sections of the RLPHRA. First she cites the definitions contained in § 4851b(2) which defines accessible surfaces as '... surfaces painted with lead-based paint that is accessible for a young child to mouth or chew.' Section, she refers to § 4852d(a), and indirectly, to the penalty provisions of § 4852d(b)(3). Section 4852d compels the Secretary of Housing and Urban Development to ensure that regulations promulgated under the Act 'require that before the purchaser or lessee is obligated under any contract to purchase or lease the housing, the seller and the lessor shall ... (A) provide a hazard information pamphlet ... and (B) disclose to the purchaser or lessee any known lead-based paint or any known hazards in such housing.' Title 42 U.S.C. § 4852d does not require either the buyer or the seller to conduct an inspection, nor does the statute nor any regulation require either to take action to reduce any lead-based paint or lead-based paint hazards. The statute likewise does not require landlords nor tenants who contract in a lease agreement to conduct any type of inspection or hazard reduction. The statute specifically requires only delivery of lead-based paint hazard information and the disclosure of known lead paint hazards. The penalty provisions of § 4852d(b)(3) specifically limit the available remedy to purchasers and lessees and imposes such liability only in the event the lessor or seller fails to make appropriate disclosures under § 4852d(a)(1)(A) & (B). Significantly, the statute by express language affords such relief only to the purchasers or lessees. Ms. Phillips has never suggested that she is a lessee or purchaser of housing within the inventory of the HABD. It is a fundamental principle of statutory interpretation that if a statute is unambiguous that it is unnecessary; indeed, improper to look to outside sources in interpreting its terms. ...**Section 4852d does not create an enforceable, individual right to the abatement of lead based paint nor does it afford the possibility of relief based upon failure to comport with the disclosure requirements to a person other than a lessee or purchaser.**

"The definition of 'accessible surfaces' expresses a legislative concern for children, however, it does not follow that the definition of such surfaces transforms the remedial goals of the Act into an individual right of children to seek damages under the Residential Lead-Based Paint Hazard Reduction Act. **Despite the defendant's express assertion that the Act does not provide an unambiguous right, the plaintiffs have failed to direct the court to the statutory text from which such a right can be said to have emanated.**

"After consideration of the foregoing, Count III of the amended complaint

which alleges liability on the part of HABD for violation of the Lead-Based Paint Hazard Reduction Act of 1992 is due to be DISMISSED."

(Emphasis added).

While Count III was not couched as a § 1983 action, as is Count XXII, the Court held that RLBPHRA does not provide an unambiguous right to the plaintiffs in the present case – a necessary requirement to the maintenance of a §1983 action. See Gonzaga, 536 U.S. at 283. Accordingly, Count XXII is also due to be dismissed.

### C. Count XXIII

Count XXIII alleges a § 1983 claim against HABD for deprivation of rights under the USHA. The Court has previously held that the USHA created no individual substantive federal right enforceable by the plaintiff in a § 1983 action. The Court held:

> "§ 1437 ..., even when examined in a pre-Gonzaga matrix, was considered too vague to create substantive rights in the plaintiffs and only the LPPPA and the regulations applicable to it were able to 'create' a right under the USHA when imported into the Housing Act by implementing regulations. This is precisely the kind of statutory ambiguity which precludes a finding that a substantive individual right was the intent of Congress under Gonzaga and Sandoval. This analysis holds true in Simmons v. Charleston Housing Authority, 881 F. Supp. 222 (S.D. W.Va. 1995), another case cited by plaintiffs. In Simmons the federal right was found to exist because of 'the LBPPPA and the implementing regulations of both statutes [referring the USHA] and because the [court has not found anything in the statute or regulations precluding the 1983 cause of action...' (Emphasis added). Neither of the factors supporting the district court's opinion in Simmons would permit a finding of a substantive individual right under the USHA under currently controlling Supreme Court and Eleventh Circuit authority. The regulations are not a legitimate source from which to find an individual right and the fact that no individual right of enforcement under § 1983 has been precluded does not suggest that an individual right has been created by Congress.

> "After consideration of the complaint, the proposed amended complaint and the brief in opposition to the motion to dismiss, it is clear that counts I and XIII of the complaint[, § 1983 Counts based on alleged violations of the USHA,] are due to be DISMISSED. **The dismissal is occasioned by the fact that (1) the plaintiffs have**

> **failed to identify any specific, discrete statutory provisions which can reasonably be said to evidence a congressional intent to create a substantive right enforceable by an individual tenant, (2) the plaintiffs have been unable to demonstrate that the Federal Housing Act or, indeed, any regulation under the Federal Housing Act provides clear and unambiguous intent of a congressional intent to creat an individual substantive federal right,** and (3) the authority cited by the plaintiff for such a finding under the USHA is premised upon an analysis now clearly deemed to be incorrect by the Supreme Court and the Eleventh Circuit of Appeals."

(Emphasis added).

As Count XXIII is also a § 1983 claim based on an alleged deprivation of rights under USHA, it is due to be dismissed.

Accordingly, this Court should dismiss counts XXI, XXII and XXIII.

## II. <u>No Remaining Federal Claims</u>

In its order of September 11, 2003, the Court indicated that once all federal claims are dismissed, the Court would relinquish jurisdiction. (Order at 33 n.18) ("In the event all discrete federal claims are resolved by a motion to dismiss or motion for summary judgment, this court is unlikely to exercise jurisdiction over the remaining state law claims."). Because, following the dismissal of Counts XXI, XXII and XXIII, all claims over which the court has original jurisdiction have been dismissed, this Court should decline to exercise its supplemental jurisdiction over the remaining state law claims.[1]

### A. <u>Negligence Per Se Counts</u>

Counts VII, VIII, IX, XVII, XVIII and XXVIII are state law negligence per se counts based

---

[1]While the Court's order of September 11 appeared to recognize that the negligence per se counts and the third party beneficiary counts were state law claims – the Court's discussion of these claims fell under the heading "THE STATE LAW CLAIMS" – HABD now affirmatively asserts that these counts are state law claims in which the Court exercises only supplemental jurisdiction.

7

on alleged violations of the aforementioned federal statutes: LPPPA, USHA, and RLPHRA. Despite the fact that these counts are based on alleged violations of federal statutes, they do not pose a claim "arising under the Constitution, laws, or treaties of the United States," so as to confer original jurisdiction on this court. This Court has held that the above federal acts do not confer private enforceable rights on the plaintiffs. Therefore, the Court does not have jurisdiction over these counts under 28 U.S.C. 1331. Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 814, 817 (1986) ("[T]he presence of a claimed violation of [a federal] statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction."); Jairath v. Dyer, 154 F.3d 1280 (11th Cir. 1998); Dickinson v. Cosmos Broadcasting Co., Inc., [Ms. Civ. A. No. 91-T-072-N, April 1, 1991] 1991 WL 715723 (M.D. Ala. 1991).

### B. Third-Party Beneficiaries Breach of Contract Claims

Counts X, XI, XIX, XX, and XXIV allege that plaintiffs were third party beneficiaries of the Annual Contributions Contract between HUD and HABD and the HAP contracts allegedly between the HABD and owners of federally subsidized Section 8 housing -- despite the fact that HABD did not administer the Section 8 housing and was not a party to any contracts related to the Section 8 properties in question. These are state law claims which do not give the Court original jurisdiction under 28 U.S.C. 1331, regardless of the fact that the contracts may involve federal funds or require interpretation of federal regulations or statutes. This conclusion is compelled by the Eleventh Circuit's decision in City of Huntsville v. City of Madison, 24 F.3d 169 (11th Cir. 1994).

In the City of Huntsville, a dispute arose regarding the City of Huntsville's contract with the Tennessee Valley Authority in which Huntsville would purchase excess TVA-generated power for resale to Huntsville's residents and for the residents of other surrounding governments. The

8

neighboring governments threatened suit over Huntsville's distribution of revenue from the power sales. Huntsville then brought a declaratory action in federal court seeking a declaration of its contractual rights and obligations under the TVA contract. Because a declaratory judgment plaintiff may only claim federal question jurisdiction if the anticipated lawsuit by the declaratory judgment defendant arises under federal law, the Eleventh Circuit reviewed the question of jurisdiction as if the surrounding governments had brought a third-party beneficiary breach of contract claim against Huntsville based on the contract between Huntsville and the TVA.

The Eleventh Circuit held that although the interpretation of the contract necessarily required an interpretation of a federal statute, the TVA Act, the fact that the dispute involved a question of federal law and a contract with a federal agency did not confer federal question jurisdiction over the action. The Court concluded: "[w]e hold that Huntsville's declaratory judgment complaint, which displaces a state contract claim that requires interpretation of a federal statute without a private remedy, does not arise under the laws of the United States." Accordingly, no federal question jurisdiction existed over the claim.

City of Huntsville compels the same conclusion in the present case. Although the plaintiff's complaint alludes to the proposition that the contracts in question have "afforded" the plaintiffs "federal rights," thus giving the Court federal question jurisdiction over the contract claims, this proposition is unsustainable in light of controlling precedent and this Court's previous ruling. As this court has extensively discussed in its order of September 11, in order to afford the plaintiffs federal rights, Congress must "speak with a clear voice" and manifest an "unambiguous intent to confer individual rights." It is axiomatic that, consistent with the previous statement, such rights cannot flow to a third party from a contract between the Department of Housing and Urban

9

Development and the Housing Authority of the Birmingham Division.  Therefore, even if the breach of contract claim requires interpretation of a federal statute, the court may not exercise federal question jurisdiction over the claim.

Accordingly, with the dismissal of the final § 1983 counts, no federal question claims remain.

### III.  Remaining State Claims to be Dismissed

It is undisputed that the Court has jurisdiction over the state law claims under § 1367 supplemental jurisdiction.  Following the dismissal of all remaining federal claims, HABD respectfully requests that the Court decline to exercise supplemental jurisdiction over the remaining state claims and dismiss the claims under § 1367(d).

Section 1367(c) allows a federal court to decline to exercise supplemental jurisdiction.  That section states: "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction."  While sub-section (c) gives the court discretion whether to decline to exercise jurisdiction, most authority states that when, as in the present case, all federal claims are dismissed well before trial, the court is advised, if not required, to dismiss pendant state claims.  See, e.g., Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988) ("When federal law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline to exercise of jurisdiction by dismissing the case without prejudice."); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (dismissal of state law claims strongly encouraged when federal law claims are dismissed prior to trial); Valencia v. Lee, 316 F.3d 299, 304, 308 (2nd Cir. 2003) (stating that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy,

10

convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims," and finding that the district court abused its discretion in continuing to exercise supplemental jurisdiction after the dismissal of all federal claims); <u>Town of West Hartford v. Operation Rescue</u>, 915 F.2d 92, 104 (2nd Cir. 1990) ("It is well settled that 'if the federal claims are dismissed before trial ... the state claims should be dismissed as well.' ") (citing <u>Gibbs</u>, 383 U.S. at 726); <u>L.A. Draper & Son v. Wheelabrator-Frye, Inc.</u>, 735 F.2d 414, 428 (11th Cir. 1984) ("[I]f all the federal claims are dismissed prior to trial," the dismissal of the state law claims is "strongly encourage[d] or even require[d]."); <u>Bagget v. First National Bank of Gainesville</u>, 117 F.3d 1342, 1353 (11th Cir. 1997).

Accordingly, HABD respectfully requests that the Court dismiss all remaining state claims pursuant to § 1367(d).

## IV.  HABD Entitled to Summary Judgment on State Claims

To the extent that the Court retains jurisdiction over the state claims (or if the court finds that it has original jurisdiction over any remaining claims, including the third-party beneficiary breach of contract claims), HABD asserts that it is entitled to a judgment as a matter of law on the following counts.

### A.  Third Party Beneficiary Claims

Counts X and XIX allege that the plaintiffs are third-party beneficiaries of the Annual Contributions Contract ("AC Contract") between HUD and HABD.  Because HUD is a party to the contract, there is some question as to the choice of law over the third party beneficiary breach of contract claim.  HABD maintains that Alabama law applies -- HUD is a party to the contract but not to the present action, and therefore the interest is applying federal law is minimal.  At least one

11

federal district court has held in a factually identical case that federal common law governs. Aristil v. Housing Authority of the City of Tampa, 54 F. Supp. 2d 1289, 1295 (M.D. Fla 1999). However, as this Court's order of September 11th, 2003 noted, the state and federal law on third-party beneficiary are similar enough that the choice of law question is mostly academic. (Order at 34-35) ("The federal common law rule applied in Aristil is substantially the same as the Alabama rule..."). For the plaintiff to establish that she was a third-party beneficiary, she must prove that "the contract was made for [her] direct benefit" or that the contract envisioned the plaintiff as an intended beneficiary. Aristil, 54 F. Supp. at 1295 (citing Crumady v. Joachim Hendrik Fisser, 358 U.S. 423, 428 (1959)).

In Aristil, Chief Judge Kovachevich found that the plaintiff residents were not third party beneficiaries of an AC contract between HUD and the Housing Authority of the City of Tampa, Florida.

> "Section twenty-one of the ACC explicitly states that '[e]xcept as to bondholders ... nothing in this ACC shall be construed as creating any right of any third party to enforce any provision of the ACC or to assert any claim against HUD or the [Housing Authority].' ... Therefore, after considering the legislative history and the language of the LPPPA, the USHA, and the ACC, the Court finds that Plaintiffs, in this instance, were not intended beneficiaries of the ACC entered between the Housing Authority and HUD. The ACC expressly provides that no rights are created in any person as a third party beneficiary. Accordingly, Plaintiffs do not have standing to assert the third party beneficiary claims contained in Count III of Plaintiffs' Complaint."

Id. at 1296.

The AC contract in the present case contains the identical section 21 that the court in Aristil found decisive. Accordingly, the plaintiffs can not be third-party beneficiaries of the contract and have no standing to assert counts X and XIX.

Additionally, counts XX and XXIV, alleging third party beneficiary breach of contract claims against HABD based on the Housing Assistance Payments Contracts ("HAP contracts") allegedly between HABD and the owners of the federally subsidized Section 8 housing, are due to be dismissed on the grounds that HABD was not a party to those contracts. HABD had no connection with the Section 8 properties. See (affidavit of Linda Carroll, exhibit B.)

## B. Counts XII through XXIX

Counts XII through XXIX allege various theories of recovery against HABD based on alleged injuries sustained by the plaintiffs due to exposure to lead paint at two Section 8 properties: 1017 15th Place South West, Birmingham, and 1521 33rd Street, Birmingham. However, as evidenced by the affidavit of Linda Carol, HABD does not administer the above two properties. The two properties are instead administered by the Jefferson County Housing Authority, a separate and unrelated legal entity. Accordingly, HABD had no legal duty in regards to the two properties in question, and is therefore entitled to summary judgment on counts XII through XXIX and all other counts pertaining to the Section 8 dwellings.

## V. Conclusion

HABD respectfully request that this Court grant its motion for summary judgment, dismissing all remaining federal claims and relinquishing its supplemental jurisdiction over any remaining state claims.

Respectfully Submitted,

Richard W. Lewis
(Fed. ID: 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)
Attorney for Defendant(s),

13

OF COUNSEL:

AUSTILL, LEWIS & SIMMS, P.C.
P. O. Box 11927
Birmingham, AL 35202-1927
(205) 870-3767

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished by U.S. Mail, postage prepaid and properly addressed, on this _13_ day of October, 2003 to:

Sela E. Stroud, Esq.
Bainbridge, Mims, Rogers & Smith, LLP
The Luckie Building, Ste. 415
600 Luckie Drive
Post Office Box 530886
Birmingham, AL 35253

James A. Harris, III, Esq.
HARRIS & HARRIS
2100A SouthBridge Pkwy
Suite 570
Birmingham, AL 35209

E. Martin Bloom, Esq.
FRIEDMAN, LEAK & BLOOM, P.C.
P. O. Box 43219
Birmingham, AL 35243

OF COUNSEL

# EXHIBIT
# "A"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

LATIERRA PHILLIPS, as mother and )
next friend of La Shundra Harris, La )
Shone Harris, Cornelious Harris, and )
La'Warron Phillips, )
                          )
      Plaintiff(s), )
                          )
vs. )               CIVIL ACTION NO.:
                          )              CV - 03-PWG-0616-S
HOUSING AUTHORITY OF THE )
BIRMINGHAM DISTRICT, Timothy )
Clark and Wash Co., Inc. , )
                          )
      Defendant(s). )

---

### AFFIDAVIT OF TERESA REYNOLDS

---

**STATE OF ALABAMA** )
**COUNTY OF JEFFERSON** )

     1.    My name is Teresa Reynolds.  I am over the age of nineteen (19) years, and I have personal knowledge of the matters and allegations set forth hereafter.

     2.    I am an employee of the Housing Authority of the Birmingham District.

     3.    The attached contract is a true and correct copy of the Annual Contributions Contract between The U.S. Department of Housing and Urban Development and the Housing Authority of the Birmingham District in force during all relevant times complained of in the plaintiff's complaint.

     4.    This contract was kept in the course of regularly conducted business.  It is the regular practice of the Housing Authority of the Birmingham District to make,

gather, and keep records of such kind.  I know the method used regarding the

records of the kind now exhibited.

*Teresa Reynolds*
Teresa Reynolds

**STATE OF ALABAMA** )
**COUNTY OF JEFFERSON** )

    I, the undersigned, a notary public in and for said county in said state, hereby certify that Teresa Reynolds, whose name is signed to the foregoing document, and who is known to me, acknowledged before me on this day that, being informed of the contents of the document, she executed the same voluntarily on the day the same bears date.

    Given under my hand this __ day of September, 2003.

*[signature]*
Notary Public

My Commission Expires: 4-11-07

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Apr 11, 2007
BONDED THRU NOTARY PUBLIC UNDERWRITRY

U.S. Department of Housing
and Urban Development



# Terms and Conditions

Constituting Part A of a

Consolidated Annual Contributions Contract

Between Housing Authority and

the United States of America

Forms HUD-53010 and
HUD-53011 are obsolete

Form HUD-53012A
(7/95)

# TABLE OF CONTENTS

## – Part A –

| Section | | Page |
|---------|--------------------------------------------------------|------|
| Section 1 | Consolidation of Annual Contributions Contract. | 1 |
| Section 2 | Definitions. | 1 |
| Section 3 | Mission of HUD. | 2 |
| Section 4 | Mission of the HA. | 2 |
| Section 5 | Covenant to Develop and Operate. | 3 |
| Section 6 | Cooperation Agreement(s). | 3 |
| Section 7 | Covenant Against Disposition and Encumbrances. | 3 |
| Section 8 | Declaration of Trust. | 3 |
| Section 9 | Depository Agreement and General Fund. | 4 |
| Section 10 | Pooling of Funds. | 4 |
| Section 11 | Operating Budget. | 5 |
| Section 12 | Civil Rights Requirements. | 5 |
| Section 13 | Insurance Requirements. | 6 |
| Section 14 | Employer Requirements. | 7 |
| Section 15 | Books of Account, Records, and Government Access. | 7 |
| Section 16 | Termination of a Project Under Management. | 7 |

Form HUD-53013A
(7/95)

**Section**                                                                    **Page**

Section 17      Notices, Defaults, Remedies.                                    7

Section 18      Rights and Obligations of HUD While                            9
                in Possession of Project(s).

Section 19      Conflict of Interest.                                          9

Section 20      Interest of a Member or Delegate to Congress.                  11

Section 21      Rights of Third Parties.                                       11

Section 22      Performance of Conditions Precedent to                         11
                the Validity of this ACC.

Section 23      Waiver or Amendment.                                           11

-ii-

# SEE FILE FOR EXHIBITS