IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

T ‖ ᶜ ᶜ ᴰ

03 OCT 30 PM 4: 4 ̇

U.S. DISTRICT COURT
N.D. OF ALABAM,

| | | |
|---|---|---|
| LATIERRA PHILLIPS, as mother and<br>next friend of Lashundra Harris,<br>Lashone Harris, Cornelious Harris, and<br>La'warron Phillips, | ) <br>) <br>) <br>) <br>) | |
| Plaintiffs, | ) <br>) | |
| v. | ) <br>) | Civil Action No.:<br>CV-03-PWG-0616-S |
| Housing Authority of the Birmingham<br>District, Timothy Clark, and Wash Co.,<br>Inc., | ) <br>) <br>) <br>) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF DUPONT'S MOTION FOR SUMMARY JUDGMENT AS TO COUNTS XXX, XXXI, AND XXXII

In her Second Amended and Restated Complaint, Plaintiffs Latierra

Phillips and her minor children, La Shundra Harris, La Shone Harris, Corneilious

Harris, and La'Warron Phillips, asserted numerous claims against five different

defendants arising from the presence of lead-based paint in certain dwellings in

which the plaintiffs resided. These defendants are as follows: (1) the Housing

Authority of the Birmingham District; (2) the Jefferson County Housing Authority;

(3)Timothy Clark; (4) Wash Co., Inc.; and (5) E. I. du Pont de Nemours and

Company (hereafter DuPont). Plaintiffs' claims include twenty-nine (29) counts

against the first four defendants mentioned above, and only three (3) counts

against DuPont. These three counts allege that DuPont is liable to Plaintiffs: (1)

under the Alabama Extended Manufacturer's Liability Doctrine; (2) due to

45

negligence, wantonness, and recklessness; and (3) due to breach of express and implied warranties.

Summary judgment as to the counts of Plaintiffs' Second Amended and Restated Complaint which relate to DuPont – Counts XXX, XXXI, and XXXII – must be granted for three reasons:

(1)     Plaintiffs lack any evidence that any lead-based paint manufactured by DuPont is or was ever present in any of the plaintiffs' alleged residences;

(2)     Summary judgment must be granted as to Counts XXX and XXXI because Plaintiffs fail to allege the essential element of a safer alternative design;

(3)     Summary judgment must be granted as to Counts XXX, XXXI, and XXXII because they are preempted by the Federal Hazardous Substances Act.

## Statement of Undisputed Material Facts

1.     Plaintiffs filed a Second Amended and Restated Complaint on August 29, 2003, adding DuPont as a defendant.  In response, counsel for DuPont approached Plaintiffs' counsel and inquired as to the reason for adding DuPont as a defendant in this case.

2.     Plaintiffs' counsel responded that they had discovered a one-quart paint can labeled DuPont Duco Satin Sheen Enamel 297 Misty Gray paint ("DuPont's Misty Gray paint") in the basement of the residence at 1521 33rd Street in Birmingham, Alabama.   Plaintiffs allege that they had resided at this address in 2000 through 2002.  See Complaint, ¶ 9.

2

3.     Counsel for DuPont asked to see this one-quart paint can, and Plaintiffs produced it.  Counsel for DuPont took a photograph of the paint can label, which is attached as Exhibit 2.

4.     Counsel for DuPont then asked Eric C. Houze, a DuPont paint chemist and senior research associate with twenty-three years experience in formulating paints and coatings for DuPont, to investigate and provide a chemical analysis of DuPont's Misty Gray paint.  See Houze Affidavit, ¶¶ 1, 2 (attached hereto as Exhibit 1).

5.     Mr. Houze's investigation and analysis involved reviewing:  (1) the photograph of the paint can labeled Misty Gray; (2) DuPont Product Information Service Bulletin, dated February 28, 1964, announcing that Misty Gray will be introduced by DuPont for the first time at the 1964 World's Far; (3) Marshall Development Laboratory Release Letter No. 2008, dated March 10, 1964, confirming the commercial introduction of DuPont's Misty Gray paint; (4) The Duco Satin Sheen Enamel entry in DuPont's Products Book (1963-1964); and (5) DuPont's formula cards for Misty Gray.  See Houze Affidavit, ¶ 3.

6.     Mr. Houze determined that DuPont's Misty Gray paint was first commercially available in 1964, and was not manufactured after 1969.  Thus, it

3

was only in the commercial paint market for a six-year period.  <u>See</u> Houze
Affidavit, ¶ 4.

7.     Mr. Houze read the codes from DuPont's Misty Gray paint formula cards
and determined its ingredients.  He determined that DuPont's Misty Gray paint
did not contain any lead pigment or any lead driers.  <u>See</u> Houze Affidavit, ¶ 6.

8.     Mr. Houze also determined that the only lead in DuPont's Misty Gray paint
was a minute amount in the resin.  The normal variation of lead content in that
paint ranges from 0.0086 percent to 0.0106 of the weight of the total nonvolatile
content of the paint.  This is at least six times less than the amount of lead that
federal regulations, such as the Lead-Based Paint Poisoning Prevention Act, 42
U.S.C. § 4821 <i>et seq.</i>, and the Residential Lead-Based Paint Hazard Reduction
Act of 1992, 42 U.S.C. § 4851 <i>et seq.</i>,  allow in consumer paint today. <u>See</u>
Houze Affidavit, ¶¶ 7, 10.

9.     Plaintiffs' counsel asked Guardian Systems, Inc. to perform a lead
analysis of the substance contained in the paint can discovered in the basement
of 1521 33rd Street in Birmingham, Alabama.  Guardian did so, and submitted
two reports concerning that analysis.  The first report indicates that the lead in
the substance was 0.0021 percent of the weight of the total nonvolatile content.
The second report indicates that the lead in the substance was 0.1461 percent of
the weight of the total nonvolatile content. <u>See</u> Houze Affidavit, ¶¶ 11, 12.

10.     Mr. Houze compared the results in the Guardian reports to the results of his investigation and analysis.  His conclusion was that the paint in this can has a different chemical composition than DuPont's Misty Gray paint.  Therefore, the substance in the can is different from DuPont's Misty Gray paint. See Houze Affidavit, ¶¶ 13, 14.

11.     There is no evidence that any DuPont lead-based paint is or ever was present at any of the residences Plaintiffs occupied.

## Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that the moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law."  Fed R. Civ. P. 56(c); Poplin v. Bestway Express, 2003 WL 22331032, *1 (M.D. Ala. Oct. 6, 2003).  The mere existence of some disputed fact or facts does not require that a case go to trial, but rather the disputed facts must be material to an issue necessary for the proper resolution of the case, and the quantity and quality of the evidence offered to create a question of fact must be adequate for a jury verdict.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

5

One of the purposes of Rule 56 is "to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The nature of the summary judgment inquiry is to determine "whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of facts because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In order to avoid summary judgment, the nonmovant must raise a factual dispute that is both material and genuine. See Connally v. Sears Roebuck & Co., 86 F.Supp.2d 1133, 1136 (S.D. Ala. 1999). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 247.

"Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. For factual issues to be considered genuine, they must have a real basis in the record." Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (internal quotation marks deleted). The nonmovant "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, "[w]here the record taken as a whole could lead a rational trier of fact to find for the nonmoving party, there is not [a] genuine issue for trial." Id. at 587 (internal quotation marks omitted).

6

In Adickes v. Kress, 398 U.S. 144 (1970), and later modified in Celotex Corp. v. Catrett, 477 U.S. 317 (1986),  the Supreme Court instructed the federal courts to employ a two-part framework of shifting burdens to determine whether, as regards a given material fact, there exists a genuine issue precluding summary judgment.  The movant's initial burden consists of a "responsibility [to] inform the . . . court of the basis for its motions and [to] identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, which it believes demonstrate the absence of a genuine issue of material fact."  Id. at 323.  The nature of this responsibility varies, however, depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or the non-movant would bear the burden of proof at trial.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

For issues on which the movant would bear the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact.  Id.  However, for issues on which the non-movant would bear the burden of proof at trial, the moving party simply may show that there is an absence of evidence to support the non-moving party's case.  Id. at 1116.  After this burden is met, "responsibility then devolves upon the non-movant to show the existence of a genuine issue as to the material fact."  Id.  To meet this burden, the non-movant may not rest upon mere allegations or denials, but must set forth specific facts and evidence showing that there is a genuine issue for trial.  Id. at 1116, n.3.  This evidence must be "sufficient to withstand a directed verdict motion at

7

trial based on the alleged evidentiary deficiency." Id. at 1117.  If the non-movant

is unable to set forth such evidence, then summary judgment should be granted.

### Argument

Summary judgment must be granted in DuPont's favor for four reasons.

First, Plaintiffs have based their claims against DuPont on a sole paint can, which

has a label identifying its supposed contents as DuPont Duco Satin Sheen

Enamel 297 Misty Gray paint ("DuPont's Misty Gray paint"), discovered in one of

their alleged residences. However, it is now undisputed that the substance

actually contained in the can has a different chemical composition from DuPont's

Misty Gray paint.  As a result, there is no material evidence that links any DuPont

paint to any of the plaintiffs' alleged residences.

Second, even if the substance in the can had been DuPont's Misty Gray

paint, Plaintiffs' claims still could not survive summary judgment.  This is because

it is undisputed that DuPont's Misty Gray paint is not a lead-based paint – the

trace amount of lead contained in the paint is a full six times less than that

required by federal statutes to be considered a lead-based paint.  Accordingly,

Plaintiffs have no evidence linking DuPont to any lead-based paint in any of their

alleged residences.

Third, Plaintiffs have failed to prove or even allege the essential element

of a safer alternative design.  This failure mandates summary judgment as to

Counts XXX and XXXI.

8

Finally, all of Plaintiffs' claims against DuPont are preempted by the Federal Hazardous Substances Act. This too mandates summary judgment in favor of DuPont.

## I.   The Substance in the Can Produced By Plaintiffs Is Different From DuPont's Misty Gray Paint

Plaintiffs have failed to produce any evidence that supports their allegation that lead-based paint manufactured by DuPont was responsible for Plaintiffs' injuries. Plaintiffs base their entire case against DuPont on a single paint can – with a label ostensibly identifying the contents as DuPont's Misty Gray paint – found in the basement of one of their three residences during the time period 1999-2002. This can, however, actually contains a substance that has a different chemical composition than DuPont's Misty Gray paint. The end result then is that Plaintiffs have no material evidence linking any DuPont paint to any of Plaintiffs' alleged residences. Indeed, the only evidence that does exist establishes that the substance in the can is different than DuPont's Misty Gray paint.

Plaintiffs must identify the manufacturer of the lead paint that injured them in order to pass the summary judgment hurdle. The "threshold requirement of any products liability action is identification of the injury-causing product and its manufacturer." Sheffield v. Owens-Corning Fiberglass Corp., 595 So.2d 443, 450 (Ala. 1992), quoting Marshall v. Celotex Corp., 651 F.Supp. 389, 393 (E.D. Mich. 1987). Although a plaintiff may satisfy this threshold requirement through circumstantial as well as direct evidence, he "must make it appear that it is more

likely than not" that the product manufactured by the defendant "was a substantial factor in producing his injury." Id. quoting Restatement (Second) of Torts § 433B, comment (a). "A mere possibility of such causation is not enough; and when the matter remains one of pure speculation and conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." Id.

Plaintiffs have failed to meet this threshold requirement. The only evidence identified by Plaintiffs thus far as supporting their allegation that DuPont manufactured the lead-based paint that allegedly injured Plaintiffs is a sole one-quart paint can found in the basement of 1521 33rd St. in Birmingham, Alabama, where Plaintiffs allegedly lived from 2000-2002. This paint can contained a label identifying the supposed contents as DuPont's Misty Gray paint. Plaintiffs apparently assumed that the substance in the can matched the label, and quickly added DuPont as a defendant to this case.

DuPont asked Eric Houze, a DuPont paint chemist and senior research associate with twenty-three (23) years experience in the field, to take all of the available information and determine if the substance in the can was in fact DuPont's Misty Gray paint. After extensive analysis, he determined that the substance in the can was different from DuPont's Misty Gray.

This analysis first involved ascertaining the history of DuPont's Misty Gray paint. After an investigation, Mr. Houze determined that DuPont's Misty Gray paint was first commercially available in 1964 and that DuPont ceased manufacturing it in 1969. See Houze Affidavit, ¶ 4. He then examined the

10

formula cards for this paint, which lists all of the ingredients in code form.  Id., ¶
6. Mr. Houze read the codes and determined the identity of the ingredients. Id., ¶
6. In doing so, he found that DuPont's Misty Gray paint did not contain any lead
pigment nor any lead driers. Id., ¶ 6.  In fact, no ingredients contained any lead
except the resin, and this only contained a minute trace amount of lead.  Id., ¶ 7.
Based on this information, Mr. Houze was able to determine that the normal
variation in the lead content in the Misty Gray paint would range from 0.0086
percent to 0.0106 of the weight of the total nonvolatile content of the paint. Id., ¶
7. Mr. Houze then reviewed the slight modifications that were made to the
formula during the five years of its existence. Id., ¶ 8.  He determined that these
modifications did not result in any change in the trace amount of lead discussed
above.  Id., ¶ 8. Thus, Mr. Houze was able to identify DuPont's Misty Gray paint
chemically.  If the paint in the can was determined to have less lead content than
0.0086 percent or more lead than 0.0106 percent, then the paint could not be
DuPont's Misty Gray paint.

Plaintiffs asked a local laboratory to perform an analysis of the substance
contained in the can.  This laboratory, Guardian Systems, Inc., reached two
different conclusions as to the lead content of that substance. Id., ¶ 12.  First, it
found that the lead in that substance was 0.0021 percent of the total nonvolatile
content. Id. The second analysis indicated that the lead in the substance was
0.1461 percent of the weight of the total nonvolatile content. Id. Both of these
findings are different than the lead content for DuPont's Misty Gray paint.  The
first reading is lower than the range, while the second reading is fourteen times

above the range.  Based on these readings, Mr. Houze concluded that the

substance in the can has a different chemical composition than DuPont's Misty

Gray paint. Id., ¶ 14.  Thus, the substance in the can is different than DuPont's

Misty Gray paint.

The significance of this is manifest.  Without the confirmed existence of

paint manufactured by DuPont, there is absolutely no link at all between

Plaintiffs' alleged residences and any DuPont paint.  Accordingly, this court

should grant summary judgment as to counts XXX, XXXI, and XXXII.

## II.     Even If the Substance In the Can Had Been DuPont's Misty Gray Paint, It Would Have Contained Only Trace Amounts of Lead and Would Not Be Classified As A Lead-Based Paint

Even if the paint in the container had been DuPont's Misty Gray paint,

Plaintiffs would still be unable to pass the summary judgment hurdle.  This is

because it is undisputed that DuPont's Misty Gray contains only a minute amount

of lead. Id., ¶ 7.  As discussed above, Mr. Houze determined that DuPont's Misty

Gray paint did not contain any lead pigment or any lead driers. Id., ¶ 6.   The only

lead contained in the paint was a tiny quantity in the resin. Id., ¶ 7.  The

maximum amount of this lead was a mere 0.0106 percent of the weight of the

total nonvolatile content of the paint.  Id., ¶ 7.

In their Complaint, Plaintiffs rely on several federal statutes in support of

their claims, among them the Lead-Based Paint Poisoning Prevention Act, 42

U.S.C. § 4821 et seq., and the Residential Lead-Based Paint Hazard Reduction

Act of 1992, 42 U.S.C. § 4851  et seq.  These statutes define lead-based paint as

paint that contains more than 0.06% lead by weight in the nonvolatile content of the paint, or the equivalent measure of lead in the dried film of the applied paint, or both.  Paint containing less than this amount of lead is not considered to be a lead-based paint.  DuPont's Misty Gray paint is far below the threshold for lead-based paint, containing six times less lead than that required to be classified as such.  Id., ¶ 10.  Thus, DuPont's Misty Gray paint is not a lead-based paint, according to the federal statutes that Plaintiffs rely upon in their Complaint.

This is a significant problem for Plaintiffs since they claim injury due to exposure to lead-based paint.  See Second Amended and Restated Complaint, ¶¶ 12-19.  In light of the undisputed evidence that DuPont's Misty Gray is not a lead-based paint, Plaintiffs do not have any evidence linking DuPont to any lead-based paint in any of their alleged residences.  Without evidence in support of this critical link, Plaintiffs' claims against DuPont have no basis, and summary judgment must be granted in DuPont's favor.

III.    **Summary Judgment Must be Granted As to Counts XXX and XXXI Because Plaintiffs Have Failed to Prove or Even Allege The Essential Element of A Safer Alternative Design**

Summary judgment must be granted as to counts XXX and XXXI of Plaintiffs' Second Amended and Restated Complaint for yet another reason.  An essential element of both of these claims is proof of a safer alternative design.  Nowhere do Plaintiffs ever even allege this element, much less present evidence of it.  Accordingly, Alabama law mandates that DuPont's motion for summary judgment as to these counts must be granted.

Count XXX of Plaintiffs' Second Amended and Restated Complaint

alleges a cause of action against DuPont based on the Alabama Extended

Manufacturer's Liability Doctrine (AEMLD). Count XXXI alleges a cause of action

against DuPont based on negligence, wantonness, and recklessness. Proof of a

safer alternative design is an essential element of **both** of these causes of action.

See Connally, 86 F.Supp.2d at 1137. As a matter of law, plaintiffs must show that

a safer, practical, alternative design was available to the manufacturer at the time

it manufactured the product before they can recover anything. Id. This must be

proven by showing that:

> (a) [t]he plaintiff's injuries would have been eliminated or in some
> way reduced by use of the alternative design; and that (b) taking
> into consideration such factors as the intended use of the [product],
> its styling, costs, and desirability, its safety aspects, the
> foreseeability of the particular accident, the likelihood of injury, and
> the probable seriousness of the injury if that accident occurred, the
> obviousness of the defect, and the manufacturer's ability to
> eliminate the defect, the utility of the alternative design outweighed
> the utility of the design actually used.

Beech v. Outboard Marine Corp., 584 So.2d 447, 450 (Ala. 1991). Both the

Alabama Supreme Court and federal district courts in Alabama have held this to

be true. See id.; Bagley v. Mazda Motor Corp., Prod. Liab. Rep. (CCH) P

16,627, 2003 WL 21040506, *8 (Ala. May 9, 2003).

Failure to present any evidence in support of an essential element of a

claim must result in dismissal of the claim. In Roe v. Aware Woman Center for

Choice, Inc., 253 F.3d 678 (11th Cir. 2001), a federal district court dismissed the

plaintiff's suit because plaintiff's complaint contained no allegations, inferential or

otherwise, regarding the essential element of defendant's motive, and the

14

Eleventh Circuit affirmed this dismissal. Id. at 683. Also, in Roberts v. Florida Power & Light Co., 146 F.3d 1305 (11th Cir. 1998), the Eleventh Circuit affirmed the dismissal of another case because the plaintiff failed to allege an essential element of their cause of action. Id. at 1308; cf. Colter v. Barber-Greene Co., 525 N.E.2d 1305 (Mass. 1988) (holding that a plaintiff alleging negligent design must show the existence of a safer alternative design that can be implemented without undue cost).

Under circumstances similar to those here, a federal district court in Alabama granted a defendant's motion for summary judgment in a case involving claims made under the AEMLD because the plaintiff had not proven that a safer alternative design existed. See Connally, 86 F.Supp.2d at 1140. There, the best evidence in support of a safer alternative design that the plaintiff could muster was testimony by an expert that safer alternative designs were economically and technologically feasible. Id. The court held that this was not enough. "[S]howing the technical feasibility of a safe design is insufficient; rather, the Plaintiff must show that the alternative design could be adapted to the existing market." Id. at 1139 (internal quotation marks omitted). As a result, the court granted summary judgment and dismissed the case. Id. at 1140; see also Liz v. William Zinsser & Co., 676 N.Y.S.2d 619, 620 (2d Dep't 1998) (holding that the action should have been dismissed "as the plaintiffs failed to demonstrate that it was feasible to design the product in a safer manner").

Furthermore, a New York state court recently dismissed a case due to the plaintiff's failure to allege a feasible design alternative that would have made the

product at issue safer.  See Sabater v. Lead Industries Assoc., Inc., 704

N.Y.S.2d 800, 804-805 (S.Ct. Bronx County, NY 2000).  The court there found

that the existence of a safer alternative design was an essential element of

plaintiff's design defect claim, and as a result of plaintiff's failure to allege it, the

court dismissed the case.  Id.

This court should grant summary judgment as to Counts XXX and XXXI of

Plaintiffs' complaint because Plaintiffs have not only failed to present evidence in

support of allegations regarding a safer alternative design, but have failed to

allege this essential element altogether.  The results in both Connally and

Sabater discussed above mandate that summary judgment be granted in

DuPont's favor due to Plaintiffs' failure to include this essential element.

## IV.   Summary Judgment Must Be Granted As to Counts XXX, XXXI, and XXXII of Plaintiffs' Complaint As They Are Preempted By the Federal Hazardous Substances Act[1]

Summary judgment must be granted as to the three causes of action that

Plaintiffs allege against DuPont – Count XXX (Violation of AEMLD), Count XXXI

(Negligence and Wantonness), and Count XXXII (Breach of Express and Implied

Warranties) – because they are preempted by the Federal Hazardous

Substances Act (FHSA).  Each of Plaintiffs' claims against DuPont is ultimately

based on an alleged failure to warn, and it is well-settled that state law claims

---

[1] As discussed in more detail below, the only way for plaintiffs to avoid preemption of their claims here, and thus summary judgment, is to amend their complaint and replace their current claims with an explicit allegation that DuPont violated the Federal Hazardous Substances Act.  See, e.g., Moss v. Parks Corp., 985 F.2d 736, 740 (4th Cir. 1993); Miles v. S.C. Johnson & Son, Inc., Prod. Liab. Rep. (CCH) P 16,455, 2002 WL 31655188, *6, n.3 (N.D. Ill. Nov. 25, 2002).  However, such an amendment would be moot, since it is clear that DuPont in no way violated the FHSA.  As discussed above in section II., DuPont's Misty Gray paint contains only traces of lead in its resin, and complied with all federal regulations as to labeling, including the FHSA.

16

related in any way to warnings or labeling involving household items are preempted by the FHSA.

### A.     Preemption

The supremacy clause contained in article VI of the United States Constitution provides that the laws of the United States "shall be the supreme Law of the Land, * * * any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const., art. VI, cl. 2.  Thus, where State law conflicts with Federal law, the former is "without effect."  Maryland v. Louisiana, 451 U.S. 725, 746 (1981).  The United States Supreme Court revisited the issue of Federal preemption in Cipollone v. Ligget Group, Inc., 505 U.S. 504 (1992).  In Cipollone, the Court reiterated that "[c]onsideration of issues arising under the Supremacy Clause start[s] with the assumption that historic police powers of the States [are] not to be superseded by * * * Federal Act unless that [is] the clear and manifest purpose of Congress." Cipollone, 505 U.S. at 516.  Accordingly, the Court noted, "[t]he purpose of Congress is the ultimate touchstone of pre-emption analysis." Id. at 516 (citations omitted).

Congress' intent to preempt State law may be manifested "by express provision, by implication, or by a conflict between federal and state law." New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance, 115 S.Ct. 1671, 1676 (1995).  However, "[w]hen Congress has considered the issue of preemption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a reliable indicium of congressional intent with respect to state authority, there is no need

17

to infer congressional intent to pre-empt state laws from the substantive provisions of the legislation." Cipollone, 505 U.S. at 517 (citations omitted).

## B.    The Federal Hazardous Substances Act

The Federal Hazardous Substances Act ("FHSA"), 15 U.S.C. § 1261 *et seq.*, was enacted in 1960 to "provide nationally uniform requirements for adequate cautionary labeling of packages of hazardous substances which are sold in interstate commerce and are intended or suitable for household use." Moss v. Parks, 985 F.2d 736, 739 (4th Cir. 1993) (quoting House Comm. On Interstate and Foreign Commerce, Federal Hazardous Substances Labeling Act, H.R. Rep. No. 1861, 86th Cong., 2d Sess. 2 (1960), reprinted in 1960 U.S.C.C.A.N. 2833, 2833).   The Act defines as a "hazardous substance" "[a]ny substance or mixture of substances which (i) is toxic, (ii) is corrosive, (iii) is an irritant; (iv) is a strong sensitizer, (v) is flammable or combustible, or (vi) generates pressure through decomposition, heat, or other means, if such substances or mixture of substances may cause substantial personal injury or substantial illness during or as a proximate result of any customary or reasonably foreseeable handling or use, including reasonably foreseeable ingestion by children."   15 U.S.C. § 1261(f)(1)(A); see also 15 U.S.C. § 1261(f)(1)(B) (also defining as "hazardous" any substance that the Consumer Products Safety Commission ("CPSC") by regulation deems hazardous).

As enacted the FHSA did not contain a preemption section.  However, when the Act was amended in 1966, the legislative history discussed the impracticality of having the states produce potentially fifty different labels for a

18

particular hazardous substance. Congress recommended "a limited preemption

amendment which would encourage and permit states to adopt requirements

identical with the federal requirements for substances subject to the Federal Act,

and to enforce them to complement Federal enforcement . . . ." Moss, 985 F.2d

at 739 (quoting House Comm. On Interstate and Foreign Commerce, Child

Protection Act of 1966, H.R. Rep. No. 2166, 89th Cong. 2d Sess. 3 (1966),

reprinted in 1966 U.S.C.C.A.N., 4095, 4096).

The 1966 amendments to the FHSA added the following preemption

provision:

> [I]f a hazardous substance or its packaging is subject to a cautionary
> labeling requirement under section 2(p) or 3(b) designed to protect against
> a risk of illness or injury associated with the substance, no State or
> political subdivision of a State may establish or continue in effect a
> cautionary labeling requirement applicable to such substance or
> packaging and designed to protect against the same risk of illness or
> injury unless such cautionary labeling requirement is identical to the
> labeling requirement under section 2(p) or 3(b).

15 U.S.C. § 1261, Note (b)(1)(A).

In discussing Congress' purpose for enacting the FHSA's preemption

provision, the Ninth Circuit Court of Appeals, in Chemical Specialties

Manufacturers Association, Inc. v. Allenby, 958 F.2d 941 (9th Cir. 1992), noted

that "on the one hand, a national safety standard would ease the burden of

compliance for chemical product manufacturers by relieving them from the

burden of complying with fifty-one separate regulatory schemes promulgated by

each state and the federal government." Id. at 950. The court noted that "[o]n

the other hand, such a standard would take police powers away from the states

who best know how to serve the interests of their citizenry." Id. "The preemption

clause in [the] FHSA balances these competing concerns by leaving cautionary labeling requirements to the federal government while allowing states to regulate the sale and use of hazardous chemicals." Id.

### C.   Types of Claims That FHSA Preempts

Federal courts almost without exception now hold that federal statutes creating labeling requirements preempt failure to warn and inadequate labeling claims. See Wallace v. Parks Corp., 629 N.Y.S.2d 570, 574 (N.Y. App. 1995); Moss v. Parks Corp., 985 F.2d 736, 739 (4th Cir. 1993); DeHaan v. Whink Prods., 1994 WL 24322, *7 (N.D. Ill. Jan. 26, 1994); Lee v. Boyle-Midway Household Products, Inc., 792 F.Supp. 1001, 1009 (W.D. Pa. 1992); Papas v. Upjohn Co., 985 F.2d 516, 520 (11th Cir. 1993); Higgins v. Monsanto Co., 862 F.Supp. 751, 758-759 (N.D. N.Y. 1994); Taylor AG Industries v. Pure-Gro, 54 F.3d 555, 564 (9th Cir. 1995); Bice v. Leslie's Poolmart, Inc., 39 F.3d 887, 888 (8th Cir. 1994); MacDonald v. Monsanto Co., 27 F.3d 1021, 1024 (5th Cir. 1994); Gile v. Optical Radiation Corp., 22 F.3d 540, 545 (3d Cir. 1994); Mendes v. Medtronic, Inc., 18 F.3d 13, 19 (1st Cir. 1994); Worm v. American Cyanamid Co., 5 F.3d 744, 748 (4th Cir. 1993); King v. E.I. Dupont De Nemours & Co., 996 F.2d 1346, 1349 (1st Cir. 1993); Shaw v. Dow Brands, Inc., 994 F.2d 364, 371 (7th Cir. 1993); Moss, 985 F.2d at 739; Arkansas-Platte & Gulf Partnership v. Van Waters & Rogers, Inc., 981 F.2d 1177, 1179 (10th Cir. 1993).

This includes the FHSA, see, e.g., Moss, 985 F.2d at 739; Wallace, 629 N.Y.S.2d at 574; Milanese v. Rust-Oleum Corp., 244 F.3d 104, 109 (2d Cir. 2001), as well as the Federal Insecticide, Fungicide, and Rodenticide Act

(FIFRA), which numerous courts have held is the same as the FHSA for the purposes of preemption analysis, see Busch v. Graphic Color Corp., 644 N.E.2d 839, 845 (Ill. App. 1995); Moss, 985 F.2d at 739; Comeaux v. National Tea Co., 81 F.3d 42, 43 (5th Cir. 1996). In particular, the Eleventh Circuit has held on numerous occasions that the FHSA preempts state causes of action. See, e.g., Hunnings v. Texaco, Inc., 29 F.3d 1480, 1488 (11th Cir. 1994); Papas, 985 F.2d at 520; cf. Lowe's Home Centers, Inc. v. Olin Corp., 313 F.3d 1307, 1313 (11th Cir. 2002) (FIFRA).

Federal statutes creating labeling requirements, such as the FHSA, preempt not only claims based explicitly on failure to warn or inadequate labeling, but also claims based even in part on these allegations. See Wallace, 629 N.Y.S. at 574; Liz, 676 N.Y.S.2d at 620; Miles v. S.C. Johnson & Son, Inc., 2002 WL 31655188, *6 (N.D. Ill. Nov. 25 2002); Pitts v. Dow Chemical Co., 859 F. Supp. 543, 549 (M.D. Ala. 1994); Milanese, 244 F.3d at 109; Linda Akee v. Dow Chemical Co., 272 F. Supp.2d 1112, 1129 (D. Hawaii 2003); cf. Chambers v. Osteonics Corp., 109 F.3d 1243, 1247-48 (7th Cir. 1997). One federal court recently ruled that an allegation that a product was "defective and unreasonably dangerous" is the same as a failure to warn allegation, and thus is preempted as well. See Miles, 2002 WL 31655188, *8 (N.D. Ill. Nov. 25, 2002). Numerous other courts have also held that negligence claims are preempted by the FHSA. See, e.g. Liz, 676 N.Y.S.2d at 620; Miles, 2002 WL 31655188, *8 (N.D. Ill. Nov. 25, 2002). Causes of action alleging a breach of warranty are also preempted if

21

they are based on part on a failure to warn. See Liz, 676 N.Y.S.2d at 620; Miles, 2002 WL 31655188, *8 (N.D. Ill. Nov. 25, 2002); Wallace, 629 N.Y.S. at 574.

Preemption should be permitted only when the plaintiff seeks to impose labeling requirements on the defendant different from those required by the federal statute at issue. In practice, this means that any claim by a plaintiff that does not explicitly mention the federal statute at issue as the appropriate standard for any warnings or labeling is preempted. See Miles, 2002 WL 31655188, *8 (N.D. Ill. Nov. 25, 2002). The reasoning for this is that claims not based on the federal statute at issue "could impose on [the defendant] labeling requirements that are different from those mandated by the [federal statute at issue]." Id.

Preemption is appropriate regardless of whether the cause of action at issue is based on a state statute, see Comeaux v. National Tea Co., 81 F.3d 42, 43 (5th Cir. 1996), or on state common law, see Busch, 644 N.E.2d at 845; Hunnings, 29 F.3d at 1488; Pitts, 859 F. Supp. at 549; Lowe's, 313 F.3d at 1313; Papas, 985 F.2d at 520. In addition, preemption is to be applied even if the claims at issue involve actions that took place before the federal statute was adopted. See Linda Akee, 272 F. Supp.2d at 1126. This is because the court deciding on the preemption issue is to be guided by the rule that "a court applies the law in effect at the time the court renders a decision." Id.

Finally, the FHSA applies to all claims involving warnings or labeling on household products. Federal courts have held that this includes paint products such as thinners, lacquers, and primers. See Pennsylvania General Ins. Co. v.

22

Landis, 96 F.Supp.2d 408, 418 (D. N.J. 2000); Kirstein v. Parks Corp., 159 F.3d
1065, 1067 (7th Cir. 1998); Moss, 985 F.2d at 739; Milanese, 244 F.3d at 109.
Indeed, at least one court has stated that the FHSA would apply to lead-based
paint. See Sherwin-Williams v. Holmes County, 343 F.3d 383, 396 (5th Cir. 2003)
(dicta). However, it makes no difference whether the paint at issue contains lead
or not. The reason why the FHSA applies to paint has nothing to do with lead.
Instead, it is because paint is flammable, which causes paint to fall under the
definition of "hazardous substance." 15 U.S.C. § 1261(f)(1)(A)(v). Accordingly,
there is no doubt that paint is covered by the FHSA.

## D.    Application of FHSA to Instant Facts

The FHSA unquestionably preempts Plaintiffs' three causes of action
against DuPont. All of the requirements for preemption of Plaintiffs' claims
against DuPont by the FHSA are met here. First, Plaintiffs' claims involve a
product – paint – covered by the FHSA due to the flammable nature of paint. As
discussed above, numerous courts have previously held that paint products are
covered by the FHSA. See Landis, 96 F.Supp.2d 408, 418; Moss, 985 F.2d at
739; Milanese, 244 F.3d at 109.

Second, all three of Plaintiffs' claims against DuPont involve an alleged
failure to warn. Count XXX explicitly mentions DuPont's alleged "fail[ure] to
provide adequate warnings" in Paragraph 174. Count XXXI alleges that DuPont
placed into the stream of commerce a product "which was defective and
unreasonably dangerous." Second Amended and Restated Complaint, ¶ 181.
As discussed above, this language is deemed to be the same as failure to warn.

See Miles, 2002 WL 31655188, *8 (N.D. Ill. Nov. 25, 2002). In any event, a negligence claim filed in conjunction with a failure to warn claim which is preempted is usually found by courts to be preempted as well, regardless of whether failure to warn is even mentioned in the negligence count. See id; Liz, 676 N.Y.S.2d at 620. Likewise, courts have usually found breach of warranty claims filed in conjunction with a preempted failure to warn claim to be preempted as well. See id.; Miles, 2002 WL 31655188, *8 (N.D. Ill. Nov. 25, 2002); Wallace, 629 N.Y.S. at 574. Thus, all of the causes of action Plaintiffs allege against DuPont are preempted.

Third, Plaintiffs have made no mention of the FHSA in their counts against DuPont (or anywhere else in their complaint). This is significant because the only way that Plaintiffs can avoid the effect of preemption is to base their claim explicitly on the FHSA. See Miles, 2002 WL 31655188, *8 (N.D. Ill. Nov. 25, 2002). Because they have not done so, there is a danger that DuPont could be subjected to labeling requirements different from the FHSA. Accordingly, for this reason as well, preemption of Plaintiffs' claims against DuPont is appropriate here.

At least one federal court in Alabama has concluded that preemption is appropriate under facts very similar to those here. In Pitts v. Dow Chemical Co., 859 F.Supp. 543 (M.D. Ala. 1994), the court held that FIFRA preempted the plaintiff's claims based on the AEMLD which were based on a failure to provide information to prospective users of a pesticide. Id. at 549. The most important part of this decision is that the court held that any claims based on the AEMLD,

regardless of whether inadequate labeling is explicitly mentioned, is *per se*
preempted by a labeling statute such as FIFRA. Id. As a result, the court granted
summary judgment in favor of the defendant.

The circumstances in Pitts are almost identical to those here. Both Pitts
and the instant case involve product liability claims under the AEMLD, both
involve a summary judgment motion claiming preemption under a federal labeling
statute, and both cases were before a federal district court in Alabama. The only
difference is the federal labeling statute at issue in Pitts – FIFRA. As discussed
above, though, FIFRA has been held to be identical to FHSA. See Busch, 644
N.E.2d at 845; Moss, 985 F.2d at 739. Thus, the Pitts decision is directly on
point, and the conclusion reached by the Pitts court should control here.

Yet another federal court recently passed judgment on literally the same
issue as that presented by DuPont here. In Miles, 2002 WL 31655188, *8 (N.D.
Ill. Nov. 25, 2002), the court granted the defendant's motion to dismiss for failure
to state a claim based on preemption by the FHSA of plaintiff's state law claims
of negligence, strict liability, and breach of implied warranty. Not only did this
decision in Miles involve the exact same federal statute as that here – the FHSA
– but it also involved almost the exact same causes of action as that here. In
fact, the only difference between the Miles case and the instant one is that Miles
involved the solvent Drano rather than paint. But since it is clear that paint
products are indeed covered by the FHSA, see Milanese, 244 F.3d at 109; Moss,
985 F.2d at 739; this difference is of no moment. Accordingly, this court should

reach the same result as the Miles court did and grant DuPont's motion for

summary judgment.

## CONCLUSION

For the reasons set forth herein, DuPont respectfully requests that

summary judgment be granted in DuPont's favor as to Counts XXX, XXXI, and

XXXII.

One of the Attorneys for Defendant
E. I. DuPont De Nemours and Company

OF COUNSEL:
John M. Johnson (JOH019)
Natasha L. Wilson (WIL326)
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, Alabama 35203
(205) 581-0700
(205) 581-0799 (fax)

26

## CERTIFICATE OF SERVICE

I hereby certify that I have on this _30th_ day of October, 2003, served the foregoing upon counsel of record for all parties to this proceeding, by placing a copy thereof in the United States Mail, first-class postage thereon prepaid and properly addressed as follows:

James Harris
G. Nicole Mapp
2100A SouthBridge
Parkway, Suite 570
Birmingham, AL 35209
Attorneys for the Plaintiffs
Birmingham

Ralph D. Gaines, III
Kyle L. Kinney
Gains, Wolter & Kinney, P.C.
1200 Corporate Drive, Ste. 250
Birmingham, AL 35242
Attorneys for Jefferson County
Housing Authority

Richard W. Lewis
Wiliam K. Bradford
Austill, Lewis & Simms, P.C.
P.O. Box 11927
Birmingham, AL 35202-1927
Attorneys for Housing Authority of
District

Alfred F. Smith
Sela E. Stroud
Bainbridge, Mims, Rogers & Smith, LLP
The Luckie Bulding, Ste. 415
600 Luckie Drive
P.O. Box 530886
Birmingham, AL 35253
Attorneys for Timothy Clark

E. Martin Bloom
Freidman, Leak & Bloom, P.C.
3800 Colonnade Parkway, Ste. 600
Birmingham, AL 35253
Attorneys for Wash Co., Inc.

_Natasha L. Wilson_
Of Counsel

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISCTRICT OF ALABAMA
SOUTHERN DISTRICT

| | | |
|---|---|---|
| LATIERRA PHILLIPS, as mother and<br>Next friend of LA SHUNDRA HARRIS,<br>LA SHONE HARRIS, CORNELIOUS<br>HARRIS, AND LA'WARRON PHILLIPS, | )<br>)<br>)<br>)<br>) | CIVIL ACTION NO. |
| Plaintiffs, | )<br>) | CV-03-PWG-0626-S |
| | )<br>) | |
| HOUSING AUTHORITY OF THE<br>BIRMINGHAM DISTRICT, JEFFERSON<br>COUNTY HOUSING AUTHORITY,<br>TIMOTHY CLARK, WASH C0., INC., and<br>E.I. DU PONT DE NEMOURS AND<br>COMPANY, | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

## AFFIDAVIT OF ERIC C. HOUZE

| | | |
|---|---|---|
| STATE OF MICHIGAN | ) | |
| COUNTY OF _Oakland_ | )<br>) | S.S. |

I, Eric C. Houze, being first duly sworn, do hereby depose and state as follows:

1.      I am a senior research associate for E. I. du Pont de Nemours & Company

("DuPont").  A copy of my curriculum vitae is attached as Exhibit "1".  For the past

twenty-three years I have formulated paints and coatings for Dupont at its laboratories in

Troy, Michigan.  This affidavit is based on my education, training, professional

experience as a Dupont paint chemist, and my review of Dupont's associated business

records.

2.     I was asked by DuPont to investigate and provide a chemical analysis of a paint
named DuPont Duco Satin Sheen Enamel 297 Misty Gray ("Misty Gray").

3.     My investigation and analysis of DuPont's Misty Gray paint involved a review of
the following documents: (1) photographs of a quart can of Misty Gray, which was
provided by the Plaintiffs' counsel in this case (Ex. 2); (2) DuPont Product Information
Service Bulletin, dated February 28, 1964, announcing that Misty Gray will be
introduced by Dupont for the first time at the 1964 World's Fair (Ex. 3); (3) Marshall
Development Laboratory Release Letter No. 2008, dated March 10, 1964 confirming the
commercial introduction of DuPont's Misty Gray paint (Ex. 4); (4) The Duco Satin Sheen
Enamel entry in DuPont's Products Book (1963-1964) (Ex. 5); and (5) DuPont's formula
cards for Misty Gray (Ex. 6).

4.     Based upon my review of Exhibits 2 through 6, I determined that DuPont's Misty
Gray paint was first commercially available in 1964. It was not manufactured after 1969.
Therefore, it was only in the commercial paint market for a six-year period. It was a
semi-gloss paint designed for use on interior walls, ceilings, trim, and furniture.

5.     As a Dupont paint chemist, I have personal knowledge of Dupont's procedures
for developing and formulating its paints. I also have personal knowledge of how
Dupont creates and maintains its paint formula cards and associated business records.

6.     DuPont's formula cards are equivalent to "recipe" cards for the manufacture of
paint. Dupont assigned each ingredient in the recipe a "code." As part of my analysis of
DuPont's Misty Gray paint, I deciphered the codes from the paint formula cards and
determined the identity of the ingredients. A list of the ingredients in Dupont's Misty
Gray paint is shown on Exhibit "7." As a result of my review and analysis of Dupont's

2

Misty Gray formula cards, I determined that DuPont's Misty Gray paint did not contain any lead pigment or any lead driers.

7.      As an additional part of my analysis of Dupont's Misty Gray formula cards, I next determined the quantity of each ingredient in DuPont's Misty Gray paint.   As a result of my review and analysis of DuPont's Misty Gray formula cards, I established that no ingredients contained any lead except the resin and that the resin in this paint only contained a minute trace amount of lead.  Based on that information, I determined that the normal variation in the lead content in the Misty Gray paint would range from 0.0086 percent to 0.0106 percent of the weight of the total nonvolatile content of the paint.  A list of the lead containing ingredients in DuPont's Misty Gray paint along with their corresponding quantitative percentages is shown on Exhibit "8."

8.      Over time, DuPont made slight modifications to its Misty Gray paint.  I reviewed those modifications and determined that they did not result in any change in the trace amount of lead noted in Paragraph Seven.

9.      I also reviewed the Federal Regulations governing the content of lead in consumer paints, which were initially effective in 1978.  These regulations permitted lead in consumer paints up to 0.06 percent of the weight of the total nonvolatile content of the paint. A copy of those regulations is attached as Exhibit "9."

10.     Based upon my review of DuPont's formula cards for Misty Gray and the 1978 Federal Regulations governing the lead content in consumer paint, I determined that the Federal Regulations permitted more than six times the amount of lead contained in DuPont's Misty Gray at any time during its availability on the consumer paint market.

Since these regulations are still in effect today, DuPont's Misty Gray paint surpasses all past and current federal standards pertaining to lead content in consumer paints.

11.     It is my understanding that Plaintiffs' counsel asked Guardian Systems, Inc. ("Guardian") to perform a lead analysis of the substance contained in the can depicted in Exhibit 2. I reviewed the results of Guardian's lead analysis of that substance. Copies of the Guardian reports are attached as Exhibits "10" and "11."

12.     The Guardian report attached as Exhibit 10 indicates that the lead in the substance is 0.0021 percent of the weight of the total nonvolatile content. The Guardian report attached as Exhibit 11 indicates that the lead in the substance is 0.1461 percent of the weight of the total nonvolatile content.

13.     I compared Guardian's lead analysis on the substance contained in the can depicted in Exhibit 2 to DuPont's Misty Gray formula cards.

14.     As a result of my comparison between Guardian's lead analysis (see Exhibits 10 and 11) and the formula for DuPont's Misty Gray paint, I determined that the substance in the can depicted in Exhibit 2 has a different chemical composition than DuPont's Misty Gray paint.

FURTHER AFFIANT SAYETH NOT.

*Eric C Houze*

Eric C. Houze

-4

Subscribed and sworn to before me

this $\underline{21}$ day of $\underline{October}$, 2003.

**PATRICIA L. ARTHUR**
**Notary Public, Macomb County, MI**
**My Commission Expires Jun. 18, 2007**

_Patricia L. Arthur_
NOTARY PUBLIC

My commission expires: $\underline{6/18/2007}$

5

# ERIC C HOUZE

## EXPERIENCE

1998-2003       Dupont Performance Coatings                    Troy, MI
*Team Coleader - Global Waterborne Basecoat Binder Devlopment (Sr Research Associate)*

- Coordinate technical activities to develop new binder systems for OEM Waterborne Basecoats (WBBC) to meet Global needs. Work closely with colleagues in Germany, Belgium, Brazil, and Mexico
- Assist in implementation of new systems in North America
- Support use of Design of Experiment methodology at Troy

1991-1998       Dupont Performance Coatings                    Troy, MI
*OEM WBBC formulation development (Sr Research Chemist to Reseach Associate)*

- Developed fundamental knowledge on how to formulate OEM WBBC to meet customer requirements through use of Statistical Design of Experiment (DOE) methodology
- Coordinated technical work with Dupont CR&D, vendors and Ford to define and optimize the durability characteristics of WBBC

1984-1990       Dupont Performance Coatings (F&FP)             Troy, MI
*Support Refinish Heavy Duty Truck business (Research Chemist)*

- Lead formulator for low VOC Imron® 5000 2K Polyurethance quality and Imron® 6000 BC/CC quality.
- Reformulated Thermoset Acrylic Enamel quality solvent system to use safer PM Acetate
- Group Leader from 1987-1990- directed 3 other chemists and dealt with numerous customer needs

1980-1984       Dupont Performance Coatings                    Troy, MI
*Support Refinish Imron® and Lucite® lacquer qualities (Chemist)*

- Reformulated Imron® solvents to use safer PM Acetate
- Developed and implemented improved formulations for the Imron® polymer and finished product.
- Developed gloss enhancing additive for Lucite®

## EDUCATION

1976-1980       Allegheny College                          Meadville, PA
- B.S., Chemistry
- Graduated Magna Cum Laude.

24836 GLENSIDE ST • SOUTHFIELD, MI 48034 • PHONE (248)583-8221
FAX (248) 583-8316 • E-MAIL ERIC.C.HOUZE@USA.DUPONT.COM


EXHIBIT
1

# SEE FILE FOR EXHIBITS