# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **LATIERRA PHILLIPS, as mother and next friend of LA SHUNDRA HARRIS, LA SHONE, HARRIS, CORNELIOUS HARRIS and LA'WARRON PHILLIPS** ) ) ) ) ) | |
| **Plaintiff,** ) ) | |
| v. ) ) | **CIVIL ACTION NO.:** |
| **THE HOUSING AUTHORITY OF THE BIRMINGHAM DISTRICT, et al.,** ) ) ) ) | **2:03-cv-00616-JEO** |
| **Defendants.** ) | |

## MEMORANDUM OPINION

This cause comes to be heard by the court *sua sponte* to examine its authority and discretion to retain jurisdiction over this action. This case was originally assigned the Honorable Paul W. Greene, United States Magistrate Judge. Following his resolution of motions for summary judgment by order dated September 27, 2006, the only federal claims adjudged ostensibly to remain viable were those brought by plaintiff Latierra Phillips in her individual capacity under 42 U.S.C. § 4852d(b)(3) against defendants Wash Co., Inc. ("Wash Co.") and Timothy Clark ("Clark"), alleging violations of disclosure requirements relating to lead-based paint hazards, as set forth in the 1992 Residential Lead-Based Pain Hazard Reduction Act ("RLPHRA"), 42 U.S.C. § 851 *et seq.* (*See* doc. 166 at 10-18, 40-47)[1]. Subsequently, Judge Greene recused himself, and the action was reassigned to the undersigned on July 2, 2008. Based upon its review of the pleadings, the court ordered the plaintiff to clarify whether she is, in fact, asserting any claims in her *individual* capacity, as opposed to the claims she brings in her

---

[1] References herein to "doc.___" are to the document number assigned by the Clerk of the Court.

capacity as next friend of her four minor children. The plaintiff has now answered that question in writing with an unambiguous "no." (doc. 243). As such, all of the federal claims which formed the basis for this court's subject matter jurisdiction have been dismissed. While the court possesses supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367(a), the court finds in its discretion, for the reasons stated below, that such claims are due to be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3) to allow their resolution in the Alabama state courts.

I.  BACKGROUND

This case was filed in this court on March 19, 2003 by the plaintiff, Latierra Phillips (hereinafter the "plaintiff"), as next friend of four of her children, La Shundra Harris, La Shone Harris, Cornelious Harris, and La'Warron Phillips (the "minor plaintiffs" or the "plaintiff's children"), who at that time ranged from three to seven years in age. (doc. 1 at ¶ 1). The action is now governed by the second amended complaint (hereinafter the "Complaint"), filed August 29, 2003. (*See* Complaint, doc. 26). In that pleading, the plaintiff asserts various claims in connection with illnesses, cognitive problems and other harm allegedly suffered by her children as a result of their exposure to lead-based paint while they resided with the plaintiff at three separate locations in Birmingham, Alabama, to wit, a unit in the "Elyton Village" public housing project in 1999 and two "Section 8"[2] houses between 1999 and 2002. (*Id*. at ¶¶ 2-19). Specifically, the plaintiff brought claims against the Housing Authority of the Birmingham District (the "HABD") as the owner and operator of Elyton Village (*id*. at ¶ 7), against Clark as

---

[2]The Section 8 housing program was created in 1974 amendments to the United States Housing Act of 1937, under which Congress hoped to "ai[d] low-income families in obtaining a decent place to live," 42 U.S.C. § 1437f(a), by subsidizing private landlords who would rent to low-income tenants. *See generally Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 12 (1993).

the owner of one Section 8 house, located at 1017 15th Place S.W. (the "Clark House"), and against Wash Co. as the owner of the other Section 8 house, located at 1521 33rd Street (the "Wash Co. House"). (*See id.* at ¶¶ 8-9). The plaintiff also brought claims against the HABD and the Jefferson County Housing Authority (the "JCHA"), alleging that one of them administered the Section 8 program relative to the Clark House and the Wash Co. House. (*Id.*) And finally, the plaintiff brought claims against E.I. du Pont de Nemours and Company ("du Pont") as the manufacturer of lead-based paint that was allegedly present in one of more of the residences. (*Id.* ¶ 14). The plaintiff brought these claims both under Alabama state law and under federal law, specifically the RLPHRA; the United States Housing Act of 1937, 42 U.S.C. § 1437 et seq. ("USHA"); the Lead Based Paint Poison Prevent Act, 42 U.S.C. § 4821 et seq. ("LPPPA"); and 42 U.S.C. § 1983 (§ 1983), as well as Housing Quality Standards established by regulation, 24 C.F.R. § 982.401 *et seq.* (the "Housing Quality Standards").

Early in the case, the court entered a scheduling order pursuant to Rule 16(b), FED. R. CIV. P., providing, among other things, that no new causes of action, defenses, or parties may be added after September 1, 2003. (doc. 19). The case proceeded through discovery and a host of dispositive motions. Among these was a motion for summary judgment that resulted in the dismissal of all claims against du Pont. (*See* doc. 82 & 83). On July 9, 2004, Judge Greene entered an amended Rule 16(b) order that extended deadlines for completing discovery to July 22, 2004 and for filing dispositive motions to August 11, 2004. (doc. 79). And on that latter date, each of the remaining defendants filed respective motions for summary judgment. (*See* doc. 89, 91, 93 and 95). Meanwhile, during the pendency of those dispositive motions, the parties consented to the jurisdiction of the magistrate judge under 28 U.S.C. § 636(c). (doc.

159).

On September 27, 2006, Judge Green entered a memorandum of decision that resolved all then-pending dispositive motions. (doc. 166). Pursuant to the terms of that ruling, the only federal claims ostensibly remaining in the action were those brought under RLPHRA, specifically 42 U.S.C. § 4852d(b)(3), against Wash Co. and Clark for their alleged failure to provide certain required disclosures regarding lead-based paint hazards upon a transfer of their respective residential properties. (*See* doc. 166 at 10-18, 40-47). However, Judge Greene concluded that standing to pursue a private cause of action authorized by § 4852d(b)(3) is limited by the express statutory language to the "purchaser" or "lessee" of the property. (doc. 166 at 17-18). See also *Mason ex rel. Heiser v. Morrisette*, 403 F.3d 28, 31 (1st Cir. 2005)*; L.B. III v. Hous. Auth. of Louisville*, 345 F. Supp. 2d 725, 729 (W.D. Ky. 2004); *Wallace v. United States*, 335 F. Supp. 2d 252, 260 (D.R.I. 2004); *Gladysz v. Desmarais*, 2003 WL 1343033, at *2 (D.N.H. Mar.17, 2003); *Skerritt v. Bach*, 23 A.D.3d 1080, 1081, 805 N.Y.S.2d 213, 215 (N.Y.A.D. 4 Dept. 2005). Accordingly, based on an assumption that the plaintiff was bringing this action both on behalf of her children and in her own right individually (*see* doc. 166 at 5), Judge Greene ruled that the plaintiff's § 4852d(b)(3) claims were viable only insofar as she brought them in her individual capacity as the property lessee and not in her capacity as the mother and next friend of the minor plaintiffs, who were neither lessees nor purchasers. (Doc. 166 at 17-18).

In addition to those federal claims, Judge Greene's order of September 27, 2006 left standing a number of claims arising under Alabama law. (*See* Doc. 166 at 63). These claims fall into three groups. The first encompasses claims alleging that each of the defendants negligently or wantonly breached duties under Alabama common law to inspect for, disclose, and

abate hazards associated with lead-based paint (*see* Complaint, Counts 4, 5, and 6 against HABD; Counts 14, 15, and 16 against JCHA; and Counts 25, 26, 27, and 28 against Clark and Wash Co.)  The second group is comprised of negligence "*per se*" claims, founded upon duties allegedly established by the provisions of federal statutes and regulations.  (*See* Complaint, Counts 7, 8, and 9 against HABD, based upon the LPPPA, RLPHRA, USHA, respectively; Counts 17 and 18 against JCHA, based upon the LPPPA and the USHA, respectively; and Count 28 against Clark and Wash Co., based upon the Housing Quality Standards).  And the third group consists of claims against Clark and Wash Co. for their alleged breaches of the lease agreements on their respective Section 8 houses (*See* Complaint, Count 29).

      Approximately one month after Judge Greene ruled on the dispositive motions, on October 31, 2006, the JCHA moved for leave to amend its answer to assert the defense that all of the plaintiff's claims against it were preempted by federal law, specifically 24 C.F.R. § 982.406, a provision contained in the Housing Quality Standards.  (*See* Doc. 172).  That motion for leave was denied by a minute docket entry dated November 7, 2006.  Despite such denial, and despite the fact that the dispositive motion deadline had expired, on November 27, 2006, the JCHA filed a motion for judgment on the pleadings pursuant to Rule 12(c) and (h)(2), FED. R. CIV. P., founded solely upon the proposition that the plaintiff's claims were subject to federal preemption by 24 C.F.R. § 982.406.  (*See* Doc. 177, 178).  At a pretrial conference held the following day, Judge Greene denied JCHA's motion for judgment on the pleadings.  (*See* minute docket entry dated 11/28/06).

      In the following months, the parties continued to file motions and submissions over a number of issues, including the scope of ongoing limited discovery to update the state of the

5

damages evidence (*see* doc. 180, 208, 211, 212, 213, 215, 216, 221), the admissibility of experts (doc. 183-205, 207), the viability and specific basis of the plaintiff's negligence *per se* claims, and the applicability of federal preemption (*see* doc. 206, 209, 210, 214, 217, 219, 220, 226, 227, 229, 231, 232, 234). On January 17, 2007, Judge Greene entered an order referring the case to mediation and staying all proceedings, with the exception of certain discovery that was authorized to continue. (*See* doc. 222). That mediation appears to have occurred on March 1, 2007 (*see* doc. 223), but was unsuccessful.

On July 2, 2008, Judge Greene entered an order of recusal. (doc. 235). The case was reassigned to the undersigned United States Magistrate Judge and set for a status conference. (doc. 236). In reviewing the court file, it was observed that, although Judge Greene's order of September 27, 2006 stated that there remained viable federal claims in the action against Wash Co. and Clark brought pursuant to 42 U.S.C. § 4852d(b)(3) by the plaintiff in her individual capacity, it did not appear from the allegations of the Complaint that the plaintiff was, in fact, pursuing any claims other than those she brought as next friend of her four minor children. For example, the Complaint is captioned as if the plaintiff brings the action only in her capacity "as mother and next friend of" her children, and she likewise alleges in the body that she "files this Complaint on behalf of her minor children . . . ," making no allegation of individual capacity claims. (Complaint at ¶ 1). Similarly, when making claims regarding harm caused and injuries suffered, the Complaint exclusively addresses harm allegedly suffered by the minor plaintiffs and contains no description of damage to the plaintiff personally. (*See, e.g., id.* at ¶¶ 16, 17, 18, 19 (outlining harm suffered by the individual minor plaintiffs), 21 ("Defendants are jointly and severally liable for Plaintiff's children's injuries . . . .)). This prompted the court to raise the

matter at the status conference, and thereafter the plaintiff was ordered to file a submission regarding whether she is proceeding on any claims in her individual capacity. (Doc. 238 at ¶ 3). On August 15, 2008, the plaintiff filed a response stating that she does not assert any claims in her individual capacity. (Doc. 243). Accordingly, all of the federal claims that formed the basis of this court's subject matter jurisdiction at the outset of the case have now been dismissed.

## II.   ANALYSIS

Federal courts have an ongoing duty to inquire into their exercise of subject matter jurisdiction *sua sponte* whenever it may be lacking. *Burr & Forman v. Blair*, 470 F.3d 1019, 1035 n. 38 (11th Cir. 2006); *University of S. Alabama v. American Tobacco Co.*, 168 F.3d 405, 409-11 (11th Cir. 1999). When the action was filed, the plaintiff asserted a number of federal claims over which this court exercised subject matter jurisdiction pursuant to 28 U.S.C. § 1331.[3] The court possessed supplemental jurisdiction over the related state-law claims pursuant to 28 U.S.C. § 1367, which essentially codifies the prior federal judicial doctrine of "pendent" jurisdiction as set forth in *United Mine Workers of Amer. v. Gibbs*, 383 U.S. 715 (1966). *See Palmer v. Hospital Auth. of Randolph County*, 22 F.3d 1559, 1563 (11th Cir. 1994). The supplemental jurisdiction statute provides in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a); *see also Palmer,* 22 F.3d at 1563-64; *Gibbs*, 383 U.S. at 725. However, supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *City of Chicago v.*

---

[3]"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

*International College of Surgeons*, 522 U.S. 156, 172 (1997) (quoting *Gibbs*, 383 U.S. at 726). Accordingly, a district court has discretion to decline to exercise supplemental jurisdiction over state-law claims when:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c); *see also Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002); *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1352-53 (11th Cir. 1997). Thus, § 1367 "reflects a dichotomy between a district court's power to exercise supplemental jurisdiction and its discretion not to exercise such jurisdiction." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 742 (11th Cir. 2006) (citations omitted).

Unlike with an exercise of subject matter jurisdiction over state-law claims premised upon § 1367(a), federal courts are not affirmatively *required* to self-examine whether or not to exercise discretionary jurisdiction under § 1367(c). *See Acri v. Varian Assocs.*, 114 F.3d 999, 1000-01 (9th Cir. 2000) (en banc); *Doe v. District of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996); *Myers v. County of Lake*, 30 F.3d 847, 850 (7th Cir. 1994); *accord Lucero v. Trosch*, 121 F.3d 591, 598 (11th Cir. 1997) (declining to consider appellant's argument, raised for the first time on appeal, that the district court should have declined to exercise supplemental jurisdiction over state-law claims under § 1367(c)). However, a district court is nonetheless *authorized* to

examine on its own motion whether to exercise supplemental jurisdiction under § 1367(c). *See, e.g., Baggett*, 117 F.3d at 1352-53; *Mack v. Augusta-Richmond County, Ga.*, 365 F. Supp. 2d 1362, 1381 (S.D. Ga. 2005); *Stachel v. City of Cape Canaveral*, 51 F. Supp. 2d 1326, 1332 (M.D. Fla. 1999).

At this point in the proceedings, as all federal claims have been dismissed, subsection (c)(3) of § 1367 clearly applies, and subsection (c)(1) may have some field of operation as well. In making a decision regarding whether to decline to exercise supplemental jurisdiction over state-law claims, a district court is to attempt to resolve the issue "'in the manner that best serves the principles of [judicial] economy, convenience, fairness, and comity . . . .'" *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1185 (11th Cir. 2003) (quoting *International Coll. of Sugeons*, 522 U.S. at 173); *see also Cook ex. rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1123 (11th Cir. 2005). "'Depending on a host of factors, then-including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims-district courts may decline to exercise jurisdiction over supplemental state law claims.'" *Shotz*, 344 F.3d at 1185 (quoting *International Coll. of Surgeons*, 522 U.S. at 173).

The court concludes here that the plaintiff's remaining claims are due to be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c). The resolution of the plaintiff's remaining claims depends upon a determination of Alabama state law.[4] "State courts, not federal courts,

---

[4] The JCHA has previously argued that all state-law claims against it are subject to federal preemption based upon a HUD regulation, namely 24 C.F.R. § 982.401. (*See* doc. 177). While a defendant's assertion of such an "ordinary" federal preemption defense cannot itself confer original jurisdiction in federal court, *see Dunlap v. G&L Holding Group, Inc.*, 381 F.3d 1285, 1290 n.8 (11th Cir. 2004); *Stern v. International Business Machines Corp.*, 326 F.3d 1367, 1371 (11th Cir. 2003), it is a matter that would be decided under federal law. *See Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1187 (11th Cir. 2004). In addition, a preemption defense implicates federal interests that can weigh in favor of a discretionary exercise of supplemental jurisdiction. *See Gibbs*, 383 U.S. at 727. However, in the context of this case, federal preemption is an affirmative

should be the final arbiters of state law." *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) (citing *Hardy v. Birmingham Bd. of Educ.*, 954 F.2d 1546, 1553 (11th Cir. 1992)). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Gibbs*, 383 U.S. at 726; *see also Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002) ("Both comity and economy are served when issues of state law are resolved by state courts."). Accordingly, both the United States Supreme Court and the Eleventh Circuit have strongly intimated that where all federal claims are dismissed prior to trial, as here, the appropriate course is to dismiss the remaining state-law claims without prejudice. *See Gibbs*, 383 U.S. at 726 ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988) ("When federal law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."); *Raney v.*

---

defense, *Dunlap*, 381 F.3d at 1290 n.8, and the JCHA did not plead it in its answer. As an affirmative defense, the failure to timely plead federal preemption in the answer may result in the defendant's waiver of the defense. *See* Rule 8(c), FED. R. CIV. P.; *Saks v. Franklin Covey Co.*, 316 F.3d 337, 349-50 (2d Cir. 2003); *Florida Health Sciences Center, Inc. v. Humana Medical Plan, Inc.*, 190 F. Supp. 2d 1297, 1303 (M.D. Fla. 2001); *Triple E Transport, Inc. v. U.S. Pipe and Foundry Co.*, 732 So. 2d 290, 292 (Ala. 1999); *but see International Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 389 (1986) (defense that National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, vested exclusive jurisdiction in the National Labor Relations Board to hear certain labor-related disputes is jurisdictional in nature and not subject to waiver in state court proceedings), *reversing* 470 So. 2d 1215 (Ala. 1985). The JCHA did move for leave to amend its answer to add the federal preemption defense (*see* doc. 172), but not until after the case had been pending for over three years, after dispositive motions had been resolved, and after the expiration of the deadline for adding new defenses set forth in the court's Rule 16(b) scheduling order. (*See* doc. 19, 79). Further, the JCHA's motion for leave failed to show "good cause" for its delay in asserting the defense, Rule 16(b), FED. R. CIV. P., and the court therefore concluded that the JCHA's lack of diligence resulted in waiver of the defense. *See Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1231-32 (11th Cir. 2008); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418-19 (11th Cir. 1998) (per curiam). Because federal preemption is not a live issue in this case, the court concludes that it is not a factor weighing in favor of an exercise of supplemental jurisdiction. Moreover, the court concludes that even if it were a consideration, it would not on balance justify a discretionary exercise of supplemental jurisdiction, given the other factors discussed in the text, in addition to the general competency of state courts to resolve questions of federal preemption. *See Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1257 (6th Cir. 1996); *Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988).

*Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (noting that this circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial"); *Rowe*, 279 F.3d at 1288; *Baggett*, 117 F.3d at 1353; *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999); *Eubanks v. Gerwen*, 40 F.3d 1157 (11th Cir. 1994).

These comity concerns are heightened where an exercise of supplemental jurisdiction would require the federal courts to decide questions of state law that are novel or less than clear cut. *See Grant v. Seminole County, Fla.*, 817 F.2d 731, 732 (11th Cir. 1987). It might be assumed that, if there was a related and substantial federal claim still remaining to be tried in this court, the issues of state law implicated by the remaining state-law claims are not so novel as to justify the dismissal of those claims based purely upon § 1367(c)(1). *Cf. Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006) ("Generally, state tort claims are not considered novel or complex."). However, because no federal claims remain, there is no concern regarding the duplication of effort and waste of judicial resources that would result from the maintenance of ongoing, parallel state and federal court litigation. And the state-law issues raised by the remaining claims here are not clear cut by any means. The plaintiff's remaining claims will turn primarily upon resolution of issues regarding the existence and scope of a duty under Alabama law of a landlord or other parties to disclose or abate hazards associated with lead-based paint. Such matters have been addressed by the Alabama appellate courts only one time, almost thirty years ago. *See Dunson v. Friedlander Realty*, 369 So. 2d 792 (Ala. 1979). The Alabama Supreme Court held at that time that the plaintiff's allegations, which were similar to those made in the case *sub judice*, failed to state a claim upon which relief can be granted,

based on the court's conclusion that no duty to disclose existed because it was unreasonable as a matter of law to expect a landlord to foresee that children of a tenant would ingest and be injured by lead-based paint. *Id.* at 795. The continued viability and reach of *Dunson*, however, is subject to potential debate. Alabama follows the *Restatement* rule that a lessor may be liable to a lessee for a condition on the premises "which involves unreasonable risk of physical harm to persons on the land," provided that

> "(a) the lessee does not know or have reason to know of the condition or the risk involved, and
> 
> "(b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk."

*Ex parte Coleman*, 705 So. 2d 392, 395 (Ala. 1997) (quoting *Restatement (Second) of Torts,* § 358 (1965)). *Dunson* itself acknowledges what was then an emerging awareness of the health hazards of lead-based paint. 369 So. 2d at 794 ("Only in recent years has the danger connected with chipping lead-based paint been appreciated.") Further, subsequent to *Dunson*, the Alabama and federal governments have each passed additional legislation that recognizes, and aims to ameliorate, the hazards associated with lead-based paint in residences and public buildings, most notably the Alabama Lead Reduction Act of 1997, Ala. Code §§ 22-37A-1 *et seq.*, and the RLPHRA. Indeed, the latter, federal legislation contains express, unambiguous findings by Congress regarding the substantial number of young children that have suffered developmental and behavioral difficulties as a result of low-level lead poisoning from the ingestion of deteriorating or abraded lead-based paint in the nation's housing stock. *See* 42 U.S.C. § 4851. It also requires certain disclosures regarding lead-based paint in connection with the sale or lease of

real property. *See* 42 U.S.C. § 4852d. While it might have been unreasonable as a matter of law to expect a landlord to understand and foresee the health hazards to children posed by lead-based paint in leased premises in 1979, it is substantially more difficult to make that case today, given the state of both current knowledge and the legislated obligations upon landlords and others in this area of the law. *See Antwaun A. ex rel. Muwonge v. Heritage Mut. Ins. Co.*, 596 N.W.2d 456, 463 (Wis. 1999) ("Simply put, we are persuaded that awareness of the dangers of lead paint in 1989 or 1990 is on a different plane than the awareness of such dangers ten, twenty, or thirty years earlier. This has a direct bearing on whether it was foreseeable in 1989 or 1990 that peeling or chipping paint in a pre-1978 house contained lead and whether it was foreseeable that lead ingested by children would be an unreasonable risk of physical harm."). Thus, other jurisdictions have recognized that there may be a state-law duty at least to disclose, and in some states even to test for or abate, hazards associated with lead-based paint, where it is or should be known that housing contains peeling lead-based paint. *See, e.g., id.*; *Chapman v. Silber*, 760 N.E.2d 329 (N.Y. 2001); *Jones v. Mid-Atlantic Funding Co.*, 766 A.2d 617 (Md. 2001); *Pine v. Kalian*, 723 A.2d 804 (R.I. 1998); *Price ex rel. Massey v. Hickory Point Bank & Trust, Trust No. 0192*, 841 N.E.2d 1084 (Ill. App. 4 Dist. 2006); *see also* Sonja Larsen, Annotation, *Landlord's Liability for Injury or Death from Lead Paint Poisoning*, 19 A.L.R.5th 405 (1994). Of course, none of this discussion is to suggest that the Alabama courts will or should re-examine *Dunson*; the point is, rather, that the issue is subject to debate and is thus one that should be authoritatively decided by the Alabama courts where practicable.

Admittedly, this case has been pending in this court for a long period of time, for a variety of reasons. There has been a significant expenditure of judicial resources in this case,

which is a consideration weighing in favor of retaining supplemental jurisdiction because sending the case to another court potentially implicates a duplication of efforts previously undertaken. *See Parker*, 468 F.3d at 736 (citing *Graf v. Elgin, Joliet and Eastern Ry. Co.*, 790 F.2d 1341, 1347-48 (7th Cir. 1986)). However, this case is ready for trial; the only real question is whether it will be tried by the undersigned in this federal courthouse or by an Alabama circuit court judge in the Jefferson County state courthouse several city blocks away, assuming that the case is refiled.[5] The undersigned inherited this case only about four months ago and has not been called upon to resolve dispositive motions or other motions that required an immersion in the applicable substantive law. Accordingly, it cannot be said that the undersigned enjoys a significant advantage in knowledge or familiarity with the remaining claims or subject matter of the action over that which might be gained by a state court judge in relatively short order. Despite the resources expended in this court, in light of the fact that no federal claims remain and the lack of recent authority from the Alabama appellate courts regarding the existence *vel non* and scope of any duties under state law relative to lead paint hazards, the court concludes that this action is due to be dismissed without prejudice.

## III. CONCLUSION

Based on the foregoing, in consideration of the circumstances of this case, and the principles of economy, convenience, fairness, and comity, this case is due to be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). A separate order will be entered.

---

[5] While the statute of limitations on the plaintiff's state-law causes of action would have otherwise run, the limitations period on claims over which this court has exercised supplemental jurisdiction is tolled while the claim is pending and for a period of 30 days after it is dismissed unless Alabama law provides for a longer tolling period. *See* 28 U.S.C. 1367(d); *Beck v. Prupis*, 162 F.3d 1090, 1099-1100 (11th Cir. 1998); *Gooden v. City of Talladega*, 966 So. 2d 232, 235 n.1 (Ala. 2007).

**DONE** this 20th day of October, 2008.

                                                          */s/ John E. Ott*
                                                          **JOHN E. OTT**
                                                          United States Magistrate Judge